**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| MILORAD DODIK, et al.<br><br>*Plaintiffs*,<br><br>vs.<br><br>U.S. DEPARTMENT OF THE TREASURY, et al.<br><br>*Defendants*. | Civil Action No. 1:26-cv-22587-JTK |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR**
**AMENDED MOTION TO DISMISS THE COMPLAINT OR ALTERNATIVELY TRANSFER THE COMPLAINT**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................ 1

ARGUMENT ............................................................................................................ 1

I. Plaintiffs Have Failed to Establish Standing ........................................................ 1

II. Plaintiffs *Ultra Vires* Claims are not Cognizable ............................................ 4

III. Plaintiffs Have Failed to Allege any Ties to the United States Rendering the Fifth Amendment Inapplicable ........................................................................ 5

IV. This Action's Tenuous Ties to this District Strongly Support Transfer to the District Court for the District of Columbia ........................................................ 6

CONCLUSION ......................................................................................................... 7

## TABLE OF AUTHORITIES

### CASES

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............ 2

*DCH Reg'l Med. Ctr. v. Azar*,
925 F.3d 503 (D.C. Cir. 2019) ............ 4

*Fla. Health Scis. Ctr. Inc. v. Sec'y of Health & Hum. Servs.*,
830 F.3d 515 (D.C. Cir. 2016) ............ 5

*Griffith v. Fed. Lab. Rels. Auth.*,
842 F.2d 487 (D.C. Cir. 1988) ............ 4

*Harrell v. Florida Bar*,
608 F.3d 1241 (11th Cir. 2010) ............ 3

*Hartz Mountain Corp. v. Dotson*,
727 F.2d 1308 (D.C. Cir. 1984) ............ 4

*Kelly v. Harris*,
331 F.3d 817 (11th Cir. 2003) ............ 1

*Lewis v. Governor of Ala.*,
944 F.3d 1287 (11th Cir. 2019) ............ 3

*Organogenesis, Inc. v. Sebelius*,
41 F. Supp. 3d 14 (D.D.C. 2014) ............ 4-5

*Terra Int'l, Inc. v. Miss. Chem. Corp.,*
119 F.3d 688 (8th Cir. 1997) ............ 6

### STATUTES

28 U.S.C. § 1391 ............ 6

## INTRODUCTION

Plaintiffs challenge to the *former* imposition of sanctions against them by the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC") remains meritless. Plaintiffs' Response to Defendants' Amended Motion to Dismiss ("Pls. Opp."), ECF. No. 16, fails to rebut any arguments made in Defendants' Amended Motion to Dismiss ("Def. Mot."), ECF. No. 13. in support of dismissal of their Am. Compl. For Decl. & Injunctive Relief, ECF No. 12 ("Am. Compl."). Plaintiffs specifically fail to provide adequate factual support for any of their claims. Consequently, this case should be dismissed. The absence of adequate factual support also strongly supports, in the alternative, transfer to the District of Columbia.

## ARGUMENT

### I. Plaintiffs Have Failed to Establish Standing

To establish standing, a plaintiff must show: (1) he has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to conduct of the defendant; and (3) it is likely, not just merely speculative, that the injury will be redressed by a favorable decision. *Kelly v. Harris*, 331 F.3d 817, 819-20 (11th Cir. 2003). Plaintiffs have failed to allege standing under each of these requirements.

First, Plaintiffs attempt to establish that they have sufficiently alleged an injury in fact. Pls. Opp. at 5-7. Specifically, Plaintiffs claim that, despite the uncontested fact that Plaintiffs are not currently on the List of Specially Designated Nationals and Blocked Persons ("SDN List"), they face contemporaneous injuries. They allege "commercial sanctions-screening databases continue to identify them as formerly designated persons; that correspondent banking relationships severed upon designation have not been fully restored; that financial institutions continue to subject them to de-risking and enhanced due diligence; and that the Government's underlying administrative

record remains intact[]" and that "this continuing flagging increases the cost, delay, and uncertainty of financial transactions and can result in outright refusal of service." *Id*. at 5. But, as was discussed in the Government's prior motion, Def. Mot. at 8-9, these are "naked assertions devoid of further factual enhancement[,]" s*ee Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation modified). Plaintiffs neither proffer the identity of the "commercial sanctions-screening databases" nor do they suggest where their "correspondent banking relationships" or "financial institutions" reside and have continued to fail to provide any specific allegation about purported cancelled transactions involving U.S. financial institutions in the Southern District of Florida.

Similarly, Plaintiffs argue that their amended complaint "alleges concrete effects of the designations themselves." Pls. Opp. at 6. But these "concrete effects" are, once more, unsupported conclusory statements. For example, Plaintiffs claim that the January 17, 2025 designations caused "compliance departments at major U.S. financial institutions to freeze or terminate accounts and block wire transfers[.]" *Id*. Yet, Plaintiffs do not name these institutions. In contrast, the Amended Complaint appears to have no issues naming impacts caused to their businesses by *foreign* financial institutions, *see*, *e.g.*, Am. Compl. ¶ 9 ("[a]s publicly reported, all bank accounts of companies owned by Igor Dodik, including 'Fruit eco' and 'Global liberty,' were officially closed by banks in both entities of *Bosnia and Herzegovina*." (emphasis added). Plaintiffs "naked assertions" fail to provide adequate factual enhancement to support their claims of actual injuries. S*ee Iqbal*, 556 U.S. at 678. And even these foreign bank accounts were closed in 2024 *prior* to the adoption of E.O. 14,140, which was raised in Defendants' Motion and unaddressed by Plaintiffs. *See* Def. Mot. at 9-10.

Second, Plaintiffs attempt to establish that their injuries are fairly traceable to Defendants and redressable. Pls. Opp. at 7-8. This effort also fails. In assessing redressability courts must first

consider whether a decision in a plaintiff's favor would significantly increase the likelihood that they would obtain relief that directly redresses the injury that is claimed. *See Lewis v. Governor of Ala.*, 944 F.3d 1287, 1302 (11th Cir. 2019). "It must be *the effect of the court's judgment* on the defendant – not an absent third party – that redresses the plaintiff's injury[.]" *Id*. at 1301 (citation omitted). Plaintiffs claim that their suit would significantly increase that likelihood, Pls. Opp. at 8, because a judgment in their favor "would remove the governmental and historical basis for the screening flags that continue to affect them." *Id*. This argument, however, fails to grapple with *Lewis* in its entirety. Plaintiffs' redressability theory requires (1) Defendants to notify a constellation of unknown domestic and, possibly, foreign third-party financial institutions and sanctions-screening database vendors that the previously imposed sanctions, which are no longer in place, are vacated; (2) these unknown third parties who, for reasons unstated by Plaintiffs, will now resume their relationships with Plaintiffs despite the fact that Plaintiffs are not sanctioned *now*. This theory ought to be summarily rejected by the Court.

Perhaps recognizing the futility of this line of argument, Plaintiffs assert that they "need not establish that every private financial institution would immediately restore every banking relationship[,]" Pls. Opp. at 8, and correctly note that they need only show that a favorable decision "would amount to a significant increase in the likelihood that the plaintiff would obtain relief that directly redresses the injury suffered." *Harrell v. Florida Bar*, 608 F.3d 1241, 1260 n. 7 (11th Cir. 2010). Plaintiffs, however, as discussed *supra*, fail to establish how a favorable decision would "significant[ly] increase" their chances of relief in any meaningful fashion. *See id*.

Fourth, Plaintiffs also claim that the sanctions imposed by the United Kingdom on Plaintiff Milorad Dodik are "collateral consequences of the very U.S. action Plaintiffs challenge. And they prove, rather than undercut, Plaintiffs' standing, redressability, and non-mootness arguments." Pls.

Mot. at 1. Evidently this link is supported by the "temporal proximity between the U.S. and UK designations." *Id*. at 3. Plaintiffs provide no evidence to support these claims and, once again, misunderstand the relevance of the UK sanctions. As Defendants' Motion discussed, "The British sanctions remain in effect for Plaintiff Milorad Dodik, which provide separate and independent reasons for global financial institutions to refuse to do business with him." Def. Mot. at 11. The paucity of factual information provided by Plaintiffs regarding which financial institutions have refused to do business with them does not allow for a clear determination as to the cause of their alleged injuries, which, once more, necessitates dismissal.

Finally, Plaintiffs argue that Defendants' mootness claims are inadequate because "the underlying executive authority remains operative, the factual findings have not been withdrawn, and no commitment against redesignation exists." Pls. Opp. at 9. But these arguments were addressed in Defendants' motion. Def. Mot. at 13-14. Here, Plaintiffs' arguments continue to fail because they have not alleged a reasonable expectation or a demonstrated probability that future designations will occur, nor have they alleged why any future designations could not be challenged under the Administrative Procedure Act.

Consequently, Plaintiffs have failed to allege standing and this suit must be dismissed.

## II. Plaintiffs *Ultra Vires* Claims are not Cognizable

*Ultra vires* review is "extraordinarily narrow," *Hartz Mountain Corp. v. Dotson*, 727 F.2d 1308, 1312 (D.C. Cir. 1984), covering only "extreme agency error," *DCH Reg'l Med. Ctr. v. Azar*, 925 F.3d 503, 509 (D.C. Cir. 2019) (citation modified). It is not enough that an agency merely misinterpret a law or misapply facts. *See Griffith v. Fed. Lab. Rels. Auth.*, 842 F.2d 487, 493 (D.C. Cir. 1988). Rather, it must "patently misconstrue[] a statute, disregard [] a specific and unambiguous statutory directive, or violate[] a specific command of a statute." *Organogenesis,*

*Inc. v. Sebelius*, 41 F. Supp. 3d 14, 23 (D.D.C. 2014) (citation omitted); *see Fla. Health Scis. Ctr. Inc. v. Sec'y of Health & Hum. Servs.*, 830 F.3d 515, 522 (D.C. Cir. 2016) ("To challenge agency action on the ground that it is *ultra vires*, [the plaintiff] must show a patent violation of agency authority. . . . A violation is 'patent' if it is 'obvious' or 'apparent."') (citation modified).

Here, Plaintiffs continue to fall short of the exacting requirements imposed by *ultra vires* review in part because their argument does not concern agency action at all. Rather, Plaintiffs continue to assert that E.O. 14,140 was not lawfully *authorized*, *see* Pls. Mot. at 11, but concede that the general actions of the agency are lawful. *See id.* ("They [Plaintiffs] do not allege that OFAC selected the wrong evidence, misunderstood an ambiguous statutory term, or exercised delegated discretion unreasonably. They allege that, as to E.O. 14140, the predicate presidential authorization itself was absent.") Their objection, instead, focuses on the authorization for that action, but, as discussed in Defendants' motion to dismiss, inquiry into the President's exercise of his powers falls outside of the powers conferred on the Judicial Branch by Article III of the Constitution. Def. Mot. at 15-16. Moreover, even if the *inquiry* was within the province of the judiciary, the requested declaratory *relief* would amount to the court issuing a purely advisory opinion concerning the lawfulness of past sanctions designations as allegedly unabated by the final agency action of OFAC delisting Plaintiffs—the irony being that to address the asserted *ultra vires* claim, Plaintiffs ask the Court to exceed its constitutional authority by issuing an advisory opinion that would fail to redress the alleged harms (even if Plaintiffs had standing to assert them).

## III. Plaintiffs Have Failed to Allege any Ties to the United States Rendering the Fifth Amendment Inapplicable

Plaintiffs continue to fail to allege any ties to the United States and are, consequently, not due any protections under the Fifth Amendment. Plaintiffs fail to address the temporal nature of their alleged ties to the United States, *see* Def. Mot. at 16, and instead doubled down on them. *See*

Pls. Mot. at 13 (Plaintiffs allege that they "*had* substantial contacts with the United States sufficient to invoke due process protections.") (emphasis added). Plaintiffs attempt to assure the Court that those "contacts are not abstract" because "the very nature of the sanctions regime confirm their existence." *Id*. Plaintiffs' theory is, confusingly, that because they were sanctioned by Defendants then they must have had significant ties to the United States. But this puts the cart before the horse. Plaintiffs could have, instead, simply alleged what ties they have with the United States. Their decision to double down on this theory strongly supports the contention that, as foreign nationals, they have no ties and are, consequently, not due any Fifth Amendment protections. Plaintiffs' continuing inability to name a single United States financial institution they do business with, discussed in Part I, *supra*, bolsters this argument.

## IV. This Action's Tenuous Ties to this District Strongly Support Transfer to the District Court for the District of Columbia

Plaintiffs' decision to bring their lawsuit in this venue remains, at best, tenuous. *See* 28 U.S.C. § 1391(e)(1). Plaintiffs' principal objection to transfer to the District of Columbia is that "[t]he *effects* of the designations were felt wherever Plaintiffs maintained financial relationships, including in South Florida." Pls. Mot. at 16. But, as discussed in Parts I and III, *supra*, Plaintiffs have not alleged any financial relationships in the United States, never mind in South Florida specifically. Hence, the totality of the circumstances favors transfer to the District of Columbia. Defendants reside entirely within the District of Columbia while Plaintiffs are foreigners residing abroad. And courts, balancing the convenience of the parties, may consider "the location [of] where the conduct complained of occurred[.]" *Terra Int'l, Inc. v. Miss. Chem. Corp.,* 119 F.3d 688, 696 (8th Cir. 1997). All of the complained-of events, specifically the signing of the relevant executive orders and the promulgation of the sanctions, took place in Washington, D.C., making that forum the most convenient.

## CONCLUSION

The Court should grant this Motion and dismiss the Amended Complaint, or alternatively transfer the case to the District of Columbia.

Dated: October 2, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

STEPHEN M. ELLIOTT
Assistant Director, Federal Programs Branch

/s/ *Patrick K. Keating*
PATRICK K. KEATING (MD Bar No. 2211140001)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (202) 598-0256
Email: Patrick.K.Keating@usdoj.gov

*Counsel for Defendants*